# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TENGIZ T. SYDYKOV, | : | Civil No. 1:21-CV-00575 |
| Petitioner, | : | |
| v. | : | |
| IMMIGRATION AND CUSTOMS ENFORCEMENT and WARDEN OF CLINTON COUNTY CORRECTIONAL FACILITY, | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is a habeas corpus case under 28 U.S.C. § 2241 brought by an immigration detainee who asserts that his detention under 8 U.S.C. § 1226(c) has become unconstitutionally prolonged. For the reasons that follow, the petition is denied without prejudice.

### BACKGROUND AND PROCEDURAL HISTORY

Petitioner Tengiz T. Sydykov ("Sydykov") is a native and citizen of Kyrgyzstan who was admitted into the United States on January 19, 2010. (Respondents' Exhibit 1, Doc. 4-1, p. 3.)[1] Sydykov's status was adjusted to lawful permanent resident on June 25, 2012. (Respondents' Exhibit 2, Doc. 4-1, p. 7.) On January 11, 2019, Sydykov was convicted of weapons trafficking and

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

smuggling in the United States District Court for the Eastern District of Virginia and sentenced to 36 months incarceration. (*Id.* at 10.) On July 27, 2020, the United States Department of Homeland Security ("DHS") served Sydykov with a notice to appear that charged him as removable from the United States. (*Id.* at 7.) Sydykov was taken into custody by United States Immigration and Customs Enforcement ("ICE") and placed in Clinton County Correctional Facility ("CCCF") on August 24, 2020. (Respondents' Exhibit 3, Doc. 4-1, p. 14.)

Sydykov requested custody redetermination under 8 C.F.R. § 1236, but his request was denied by an Immigration Judge ("IJ") on September 1, 2020. (Respondent's Exhibit 4, Doc. 4-1, p. 15.) Sydykov moved to reconsider the IJ's decision on October 18, 2020, *see* Respondents' Exhibit 5, Doc. 4-1, p. 18, but his motion for reconsideration was denied on November 2, 2020. (*Id.* at 21.)

An IJ ordered Sydykov to be removed to Kyrgyzstan on January 5, 2021. (Respondents' Exhibit 6, Doc. 4-1, p. 22.) Sydykov appealed to the Board of Immigration Appeals ("BIA") on January 20, 2021, and his appeal was received by the BIA on January 25, 2021. (Respondents' Exhibit 7, Doc. 4-1, p. 43.) As of the present date, Sydykov's appeal remains pending before the BIA, and he continues to be detained in CCCF.

Sydykov filed the petition that initiated the present case on March 30, 2021, asserting that he is entitled to a writ of habeas corpus because his detention has

become unreasonably prolonged, because his detention is unlikely to end soon given the pending appeal to the BIA, because the delays in his underlying removal case have largely been caused by the actions of the government, and because the nature of his detention is not meaningfully different from criminal incarceration. (Doc. 1.) Respondents responded to the petition on April 19, 2021, and Sydykov filed a traverse in support of his petition on May 4, 2021. (Docs. 4–5.) The petition for writ of habeas corpus is accordingly ripe for the court's review.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

A United States district court may issue a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## DISCUSSION

Although there is no statutory limit on the length of time a detainee may be detained under 8 U.S.C. § 1226(c), *Jennings v. Rodriguez*, 583 U.S. __, 138 S. Ct. 830, 846 (2018), a petitioner may still bring an as-applied constitutional challenge alleging that his continued detention has become unconstitutional under the Due

Process Clause of the Fifth Amendment. *Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 208–09 (3d Cir. 2020). When considering whether the petitioner's detention has become unconstitutional, "[t]he most important factor is the duration of detention." *Id.* at 211. In addition to the duration of the petitioner's detention, the court must also consider "all the other circumstances" of the detention, including (1) "whether the detention is likely to continue," (2) "the reasons for the delay, such as a detainee's request for continuances," and (3) "whether the alien's conditions of confinement are 'meaningfully different' from criminal punishment." *Id.* (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)).

Applying the above standard to this case, the court finds that Sydykov is not entitled to habeas corpus relief at this time. First, with respect to the duration of Sydykov's detention, Sydykov has been detained for approximately nine months, a period of time that this court recently determined does not represent an unreasonable duration. *See Acevedo v. Decker*, No. 1:20-CV-01679, 2021 WL 120473, at *4 (M.D. Pa. Jan. 13, 2021) (Wilson, J.). The court sees no justification to depart from its reasoning in *Acevedo* and accordingly concludes that the duration of Sydykov's detention weighs against his claim for habeas corpus relief.

Second, with respect to the likelihood of continued detention, Sydykov argues that this factor weighs in favor of granting his petition because his appeal is

currently pending before the BIA and the BIA appeals process "is usually a months-long process." (Doc. 1, p. 3.) Sydykov notes that if he prevails before the BIA and obtains a remand of the case, it would likely be months before his case was reheard by an IJ, and another appeal to the BIA would still be possible after the IJ's decision. (*Id.*) Sydykov further notes that if he does not prevail before the BIA, he plans to appeal the decision to the appropriate court of appeals. (*Id.*) Respondents argue that this factor weighs against the granting of habeas relief because Sydykov's detention is not likely to continue for a significant amount of time. (Doc. 4, p. 17.) Respondents note that "[a]ll indications" are that Sydykov's appeal to the BIA "can be adjudicated in a relatively short period of time, with a decision anticipated in weeks, not years." (*Id.*)

The court finds that the second factor weighs in favor of granting habeas corpus relief because, like the petitioner in *Santos*, Sydykov has appealed his underlying immigration case to the BIA, which "means he will stay in prison as long as it takes the Board to issue its decision." *Santos*, 965 F.3d at 212. The BIA's appeals process "could take months," and the possibility of a further appeal from the BIA's decision could add even more months to the detention. *Id.* Thus, "the likelihood that [Sydykov's] detention will continue strongly supports a finding of unreasonableness." *Id.*

Turning to the third factor under *Santos*, the reasons for the delay in Sydykov's underlying immigration proceedings, Sydykov argues that this factor weighs in his favor because he has not requested any continuances in the immigration proceedings and the government has "caused a number of procedural delays." (Doc. 1, p. 4.) Specifically, Sydykov notes that one hearing was continued because the government's electronic document filing system was not functioning, two hearings were continued because the IJ had not provided copies of orders to the parties, one hearing was canceled due to a pandemic-related lockdown, and one hearing was canceled due to a snowstorm. (*Id.* at 6.) Sydykov also states that the government did not timely produce evidence to him before a January 2021 hearing, but does not assert that this failure resulted in a delay in the underlying proceedings, as the IJ still conducted the hearing as scheduled. (*Id.*)[2] Respondents respond that the government "has not intentionally delayed or unreasonably prolonged Petitioner's proceedings" and that his underlying removal proceedings "have moved forward at the normal rate for aliens who contest removability and apply for relief." (Doc. 4, p. 17.) Sydykov responds that the

---

[2] Sydykov asserts that the government's failure to timely produce evidence violated his right to due process. (*Id.*) This due process claim is currently being litigated before the BIA, and this court does not have jurisdiction to review the decisions of the IJ or the BIA as to this claim. *See, e.g.*, *Tazu v. Att'y Gen. of U.S.*, 975 F.3d 292, 294–96 (3d Cir. 2020). Accordingly, this opinion does not address Sydykov's claim that the government's failure to timely produce evidence in his underlying removal proceedings violated his right to due process.

government's errors have been careless and in bad faith because the government "has continuously failed to remedy problems with mail and court correspondence" despite the fact that Sydykov has alerted the government to these problems on numerous occasions. (Doc. 5, p. 4.)

Like the court in *Santos*, the court finds that the reasons for delay in Sydykov's underlying removal proceedings "do not cut one way or the other." *Santos*, 965 F.3d at 212. Although the record reflects that several delays and continuances have been caused by the actions of the government and the immigration court, those delays "are not the kind of careless or bad-faith mishaps that we hold against the Government." *Id.* Contrary to Sydykov's argument that the government has been careless and has acted in bad faith, the record reflects that hearings in Sydykov's removal proceedings have been continued based on serious technological issues, problems with the mail, a pandemic-related lockdown, and a snowstorm, all of which are largely out of the government's control. Accordingly, this factor does not weigh in either party's favor.

Finally, the court considers whether Sydykov's detention is meaningfully different from criminal punishment. Sydykov asserts that his detention is not meaningfully different from criminal punishment because he is detained in a facility that also houses county and state inmates and because he "is currently

confined to his unit for twenty-three hours per day, with one hour in prison yard."
(Doc. 1, p. 6.)

Respondents argue that the conditions of Sydykov's confinement are meaningfully different from criminal confinement because Sydykov "is not housed in a cell for twenty-three hours a day." (Doc. 4, p. 18.) Respondents further note that detainees in CCCF "are provided access to TV, reading materials, recreation, and telephones to the fullest extent possible as opposed to the limited amount they might receive if housed in a disciplinary unit." (*Id.*)

Sydykov responds that he "never claimed that he is confined to a *cell* for 23 hours a day, rather he [] stated that he is confined to his *unit* for 23 hours a per day." (Doc. 5, p. 6 (emphasis in original).) Sydykov asserts that he is housed in a "general population, 60-person, dormitory-style unit, that houses a mix of county inmates and immigration detainees" and that he is confined to this unit for twenty-three hours a day with one hour of recreation time in a fenced-in yard of about 600 square feet in area.[3] (*Id.* at 6–7.) Sydykov asserts that the inside of the unit

---

[3] Sydykov makes several new arguments in his reply brief regarding the conditions of his confinement that were not previously raised in his habeas corpus petition. Ordinarily, the court would disregard these claims because it is improper for a party to raise new arguments in a reply brief. *See, e.g.*, *Hewlette-Bullard ex rel. J.H-B. v. Pocono Mtn. Sch. Dist.*, __ F. Supp. 3d __, No. 3:19-CV-00076, 2021 WL 674240, at *17 n.10 (M.D. Pa. Feb. 22, 2021). The court will consider the arguments here, however, because Sydykov's original petition properly raised the issue of the conditions of his confinement in arguing for habeas corpus relief, and the court is required to liberally construe Sydykov's filings because he is proceeding as an unrepresented litigant. *See, e.g.*, *Sause v. Bauer*, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018).

contains an 800-square foot common area and that all meals are served on trays inside the unit, though because there is insufficient space for all detainees to eat at a table, detainees sometimes have "no choice but to choose between their bed, the floor, or the space near the restroom to consume their food." (*Id.* at 7.) On several occasions, Sydykov has had to leave CCCF for the purpose of health screenings, and on each such occasion, he was shackled and accompanied by two armed correctional officers. (*Id.*) Sydykov was also made to undergo a strip search upon returning to his unit in CCCF. (*Id.*)

According to Sydykov's reply brief, free movement within the unit is allowed between 7:00 a.m. and 11:00 a.m., 12:00 p.m. and 6:00 p.m., and 6:30 p.m. and 9:30 p.m. (*Id.*) The rest of the time, detainees are expected to be in their cells. (*Id.*) Sydykov notes that there are no educational, vocational, or technical training courses available in CCCF, and no general-purpose library for the detainees to use. (*Id.* at 7–8.)

Sydykov asserts that communication with individuals outside CCCF "is extremely strained" as there are only four telephones available for use by the approximately sixty people housed in the unit and in-person visits are permitted only one day per week for one hour at a time while talking on a telephone through a pane of glass. (*Id.* at 8.) Sydykov also asserts that CCCF's law library is inadequate, that its legal research software has not been adequately updated, and

that he can only use the law library for a limited time each week. (*Id.*) Finally, Sydykov asserts that medical treatment in CCCF "is not available or very hard to obtain," as there are no routine check-ups and Sydykov has struggled to receive medical attention for a cracked tooth and migraines. (*Id.*)

Having reviewed the parties' arguments, the court finds that the conditions of Sydykov's detention are meaningfully different from criminal confinement. Most notably, Sydykov is free to move about his unit for the majority of the day, where he is given access to television, books, and recreation activities and is served meals dormitory style with the other residents of the unit. This is in contrast to the much more restricted movements and activities that Sydykov would likely face if he were criminally confined. The fact that Sydykov and other detainees are given largely unfettered access to telephones during the free movement periods in a day also indicates that his detention is meaningfully different from criminal confinement. Accordingly, the court finds that this factor weighs against granting habeas corpus relief.

The court therefore finds that the duration of Sydykov's detention and the conditions of his detention weigh against habeas corpus relief, the likelihood that his detention will continue weighs in favor of habeas corpus relief, and the reasons for the delay in his underlying removal proceedings do not weigh in either direction. Having considered those factors and all other circumstances of

Sydykov's detention, the court finds that habeas corpus relief is not warranted at this time. The court will therefore deny the petition without prejudice to Sydykov's right to renew the petition if his detention becomes unreasonable in the future.

## CONCLUSION

For the foregoing reasons, Sydykov's petition for writ of habeas corpus (Doc. 1) is denied without prejudice. An appropriate order follows.

<pre>                                        s/Jennifer P. Wilson
                                        JENNIFER P. WILSON
                                        United States District Court Judge
                                        Middle District of Pennsylvania</pre>

Dated: June 2, 2021